[No. 11724.  Department One.  June 27, 1914.]

SIMPSON LOGGING COMPANY, *Respondent*, v. CHEHALIS
COUNTY, *Appellant*.[1]

TAXATION—ASSESSMENT — EQUALIZATION — REVIEW.  The acts of
the board of equalization being of a quasi judicial nature, its find-
ings will not be disturbed in the absence of a showing of fraud, or
that its action was arbitrary or capricious.

SAME.  Where the valuation of property adopted by the board
of equalization for the purposes of taxation is so grossly excessive
as to constitute actual fraud, the court has jurisdiction to review
the assessment in a proper proceeding.

TAXATION—ASSESSMENT—EXCESSIVENESS—CONSTRUCTION — FRAUD.
Where a county cruise of timber for the purposes of assessment was
unsatisfactory, and upon objection to the board of equalization, a
new cruise was agreed upon and made by a cruiser selected by the
county, showing one-fourth less timber than the first cruise, the
assessment of the timber upon the basis of the first cruise is con-
structively fraudulent, when taken in connection with the sur-
rounding circumstances.

PLEADING—TENDER—ADMISSIONS.  A tender of a tax is admitted
where a complaint alleges the tender and that it was wrongfully
refused, and the answer admits the tender but denies that it was
wrongfully refused, as the denial was of a mere conclusion and pre-
sents no issue.

APPEAL—PRESERVATION OF GROUNDS—OBJECTIONS BELOW.  In the
absence of a motion to retax the costs below or to strike the cost
bill, error cannot be urged in taxing the costs.

Appeal from a judgment of the superior court for Che-
halis county, Clifford, J., entered August 22, 1913, upon
findings in favor of the plaintiff, in an action to secure a re-
duction of a tax.  Affirmed.

*J. E. Stewart, A. Emerson Cross, O. M. Nelson*, and *W. E.
Campbell*, for appellant.

*W. H. Abel (Chas. F. Munday*, of counsel), for respond-
ent.

[1]Reported in 141 Pac. 344.

MAIN, J.—The purpose of this action was to require the defendant, Chehalis county, to accept, as taxes upon certain timber lands of the plaintiff, a less amount than appeared upon the tax rolls as the amount of the taxes for the year 1912, and to cancel the excess.

During the years 1911 and 1912, Chehalis county caused all the timber lands within its boundaries to be cruised for the purpose of ascertaining the quantity of merchantable timber thereon. For the purpose of accomplishing this result, a chief cruiser was employed by the county, who in turn appointed assistant cruisers. The assistants worked under instructions from the chief cruiser, and their work was approved by him. The plaintiff, at the time, owned a large number of acres of timber land situated in the county. These were covered by the cruise. In the year 1902, a fire swept through certain of the sections owned by the plaintiff and burnt a large portion of the timber thereon. There were approximately eight sections affected by the fire. These were covered by the cruise made by one of the assistant cruisers by the name of Morarity, and will hereafter be referred to as the Morarity cruise. After the cruise had been made, the county assessor adopted it as the basis upon which to predicate the assessment.

When the county board of equalization met pursuant to the statute, during the year 1912, the plaintiff, together with others, presented protests, claiming either that the quantity of timber shown by the cruises and adopted by the assessor was excessive in amount, or that the valuation was too high. The plaintiff claimed that the cruise on the eight sections of land which had been burned over showed a greater quantity of merchantable timber than actually existed upon the land. The matter was considered by the board of equalization and negotiations had between it and the owner relative to devising some plan or scheme whereby a subsequent verification of the cruise might be made. The board finally concluded that, its sessions being limited to a period of three weeks'

time, and in its opinion it being doubtful whether it had a right to incur the expense, the board as such could not attempt to make a recruise of the timber in question.

The evidence is not very definite, yet it is sufficient to show that the board, while not entirely satisfied with the Morarity cruise, yet sustained it because, as one of them testified, they did not know whether it was right or wrong, and concluded that it should be sustained until it was shown to be not right. There was no formal record made, but the evidence clearly shows that there was an understanding, more or less definite, had between the members of the board and the plaintiff, that, after the adjournment of the board, the county commissioners would, together with the logging company, make a new cruise of the land, and, if that showed that the former cruise was not accurate, an adjustment would be made in accordance with such second cruise.

It is unnecessary to more than call attention to the fact that, under the statute, the board of equalization consists of the treasurer, assessor, and the county commissioners. The county was to select the cruiser for the subsequent cruise, and the expense thereof was to be borne equally by the county and the Simpson Logging Company. After the adjournment of the board of equalization, application was made to the board of county commissioners for a new cruise. This board thereupon appointed one Noble to recruise the land in controversy. The plaintiff had no voice in making this appointment and Noble was a stranger to it. Thereafter Noble proceeded to cruise the timber upon the eight sections of land about which there was a dispute as to the quantity of timber. This cruise showed that there was a little more than one hundred million feet less of merchantable timber upon these particular sections than was shown by the Morarity cruise, or substantially one-fourth. The amount of the tax based upon the Noble cruise was $5,778.95. While the amount of the tax based upon the Morarity cruise which was adopted by the board of equalization would be $7,644.23.

The plaintiff tendered to the county treasurer the amount of tax for which it would be liable, based upon the Noble cruise, and thereafter instituted the present action for the purpose of compelling the county to accept the Noble cruise as a basis upon which to compute the tax. The cause was tried to the court without a jury. Judgment was entered sustaining the contentions of the plaintiff. The defendant has appealed.

In this case, no question is presented involving the value placed upon the timber by the board of equalization, but the only question is as to the quantity of merchantable timber upon the sections which had been burned over. For the purposes of this opinion, it will be assumed, but not decided, that, when the question is one of quantity, the same rules of law apply as when the controversy is over the value, in determining the right or power of the court to review an assessment as equalized by the board of equalization. The general rule is that, since the board of equalization acts in a quasi judicial capacity, its findings will not be disturbed in the absence of a showing that its action was arbitrary, capricious, or that there was fraud, either actual or constructive. *Olympia Water Works v. Gelbach*, 16 Wash. 482, 48 Pac. 251; *Edison Elec. Ill. Co. v. Spokane County*, 22 Wash. 168, 60 Pac. 132; *Templeton v. Pierce County*, 25 Wash. 377, 65 Pac. 553; *Doty Lumber & Shingle Co. v. Lewis County*, 60 Wash. 428, 111 Pac. 562, Ann. Cas. 1912 B. 870.

We must, then, determine whether the action of the board was arbitrary, capricious, or fraudulent. There is nothing from which it can be concluded that the action was either arbitrary or capricious. It acted upon the only light that it then had and which, within the limited period it was permitted to remain in session, it could obtain. It has been held repeatedly by this court that the value of property for the purposes of taxation as equalized or adopted by the board of equalization may be so grossly in excess of the actual value

as to constitute constructive fraud.    In such a case, the court has jurisdiction to review the assessment in a proper proceeding.    *Knapp v. King County,* 17 Wash. 567, 50 Pac. 480; *Dickson v. Kittitas County,* 42 Wash. 429, 84 Pac. 855; *Henderson v. Pierce County,* 37 Wash. 201, 79 Pac. 617; *Case v. San Juan County,* 59 Wash. 222, 109 Pac. 809.

The trial court, after hearing the evidence, concluded that the Noble cruise must be sustained as showing the quanity of merchantable timber upon the land.    Without reviewing the evidence, it may be said that a careful consideration of the testimony convinces us that this conclusion must be sustained. It is not claimed that either the understanding with the members of the equalization board or the board of county commissioners amounted to a legally binding obligation.    But the question is whether, independent of any legally enforceable obligation by which the second cruise was to be adopted, the difference between the two cruises was such, when taken into consideration with the surrounding circumstances and facts, as to constitute constructive fraud.    As already stated, the Morarity cruise showed approximately one hundred million feet more of merchantable timber than did the Noble cruise, or an excess of one-fourth.    In connection with this fact, it must be noted that the board of equalization were not entirely satisfied with the Morarity cruise, but adopted it with some doubt as to its correctness; that the members of this board had some understanding that the county commissioners would, together with the logging company, make a new cruise of the land; that the second cruise was actually made by a cruiser selected by the board of county commissioners; and that the respondent paid one-half the expense thereof. Considering the discrepancy between the two cruises and the attendant facts and circumstances, it seems reasonably plain that the case is brought within the rule of constructive fraud, and, therefore, the action might properly be maintained.

It is argued that the respondent's tender was a conditional one, and for that reason this action should fail.    Apparently

this point was not raised in the trial court, but is argued here for the first time. We find no merit in the contention that the tender was conditional. But in any event, that question is not open here for review. The complaint alleged a tender in full payment of the taxes for the year 1912 to the county treasurer; that the tender was wrongfully refused, and "now tenders said amount into court." The answer admits the tender, but denies that "it was wrongfully refused." The allegation that the tender was wrongfully refused was a mere conclusion of the pleader. Its denial presents no issue.

Finally, it is claimed that the court erred in taxing the costs of the proceeding to the county. The respondent prepared, served, and filed a cost bill within the time and in accord with the provisions of the statute. No motion or other application was made by the appellant either to retax the costs or to strike the cost bill. The trial court was given no opportunity to pass upon this question. There being no application made to the trial court to retax the costs, the question will not here be considered.

Finding no error in the record, the judgment will be affirmed.

CROW, C. J., ELLIS, GOSE, and CHADWICK, JJ., concur.