[No. 21616. Department Two. October 29, 1929.]

HARRY W. CROSBY et al., Appellants, v. KITSAP COUNTY et al., Respondents.[1]

[1]Reported in 281 Pac. 494.

*Ray R. Greenwood,* for appellants.
*James W. Bryan,* for respondents.

MILLARD, J.—This action was instituted to enjoin the collection of taxes for the years 1926 and 1927 against certain real property, and to compel the acceptance in satisfaction of the taxes of a less amount than that assessed. It is alleged that the assessments for the years 1926 and 1927—

" . . . were made fraudulently, capriciously, arbitrarily, and are grossly in excess of the true and fair value in money of said property and grossly in excess of the assessment for the said year of like property of other persons similarly situated in Kitsap county. That the action of the assessor and other taxing officers of the defendant Kitsap county in fixing said valuation for the purposes of taxation amounts in law to fraud and renders their action therein unlawful and void."

From a judgment denying the relief sought, the plaintiffs appeal.

Appellants contend that the court should have considered, as evidence of the value of the property, the price paid for the apartments by appellants, and that the court should not have based its findings of value upon the rental received by the appellants on a lease effective since June 1, 1925.

While appellants alleged that the assessment was "grossly in excess of the assessment for the said year, of like property of other persons similarly situated in Kitsap county," there is no evidence touching the question whether there was a lack of uniformity in the assessment of appellants' property when com-

pared with other like property in Kitsap county. The only question is, was appellants' property assessed at such overvaluation as to amount to constructive fraud on the part of the assessing officers?

.Upon the appellants is the burden of establishing by clear and convincing testimony the affirmative to that question. Fraud is never presumed. What are the facts?

■ The challenged assessment and taxes are upon an apartment house property in Bremerton covering six lots and containing forty-five apartments (nine five-room, eighteen three-room and eighteen two-room apartments). The age of the building, which is of brick construction and covers six lots, is approximately eleven years. It was purchased by appellants in 1921 from the United States Housing Corporation for a consideration of $150,000, of which the appellants paid fifteen thousand dollars and interest on the unpaid purchase price until 1924, when the appellants surrendered the property to the government. In that same year, the government again sold the property to appellants for $45,000. In 1921 the Kitsap county commissioners fixed a valuation of $45,000 on the property. Taxes were levied on that basis from 1921 until 1926. In 1926 the property was assessed at $97,000 actual value, or a taxable value of $48,500. In 1927 the property was assessed at $96,860 actual value, or a taxable value of $48,430. Appellants tendered payment of taxes upon the property based upon an actual valuation of $45,000, which tender has been kept good.

Appellants' expert witnesses, whose qualifications were admitted by respondents, testified that, in their opinion, the property had a market value of from forty to forty-five thousand dollars. One of those witnesses testified on direct examination:

"Q. Have you computed, Mr. Fulmer, the rental value of this building as a saleable proposition, and the expenses. A. I have. MR. BRYAN: I object to that as an involved question. It takes in the question of value as a saleable proposition and not asking for facts. THE COURT: If you will eliminate 'saleable proposition.' Q. *For the purpose of obtaining the proper market value?* A. I have. Q. And you have such a statement? A. I have. Q. Please state to the court what it is?"

Another of appellants' expert witnesses testified on direct examination:

"Q. *What, in your opinion, after examining into its earnings, what was its fair market value* the first day of March, 1926, and the first day of March, 1927? A. $40,000."

He testified on cross-examination:

"Q. *That is based on earnings and not on construction?* A. *It is based on the investment.* Q. How much did it cost to build that property? You do not know what it cost to build it? A. No, I am not in that line of business. Q. *How did you appraise it?* A. *From the income.* Q. And you base your testimony solely on the income? A. I do."

Appellants' third expert witness, who was engaged in the banking business, testified that he was acquainted with the property in 1927, sold real estate in Kitsap county for many years; that in his opinion the fair market value of this property was $45,000.

The county assessor, who assessed the property in 1927, testified that in his opinion the "fair market value of the property is $150,000." He did not testify upon what he based that opinion. Another of respondents' witnesses, a deputy assessor of King county of eleven years' experience as an assessing officer, made an official appraisal in connection with the Kitsap county assessor's office, and made the 1926 assessment. His testimony as to market value was as follows:

"Q. Can you testify what you consider the fair market value of the property? MR. GREENWOOD: · He said he didn't know. THE COURT: He said he didn't know, but he estimated the cost of the building. A. I could testify to the value I would put on the property. THE COURT: You have testified to that. A. No, he asked me what the cost of the building was. Q. You testified you did actually assess it. I think the figures are here. A. Yes, that is all right, but that is a big reduction of what I assessed it at and what I figure the building cost. Q. MR. BRYAN: That is your assessment of the property? A. Yes, sir. Q. And that is your appraisal of it? A. Yes, sir."

As evidence of the value of the property, the price paid therefor by the appellants was some evidence of its market value at the time it was purchased. The value at the time of trial may have been greater or less. The price of $150,000 when the government first sold the property to the appellants in 1921, and the price of $45,000 when resold to the appellants in 1924, are not determinative of the fair market value of the property in 1926 and 1927. To show the fair market value of the property, three expert witnesses testified for the appellants. The county assessor and a deputy assessor testified that the fair market value was greater than claimed by the appellants. The increase in population and greater industrial activity in Bremerton may have resulted in increasing the value of the property. There may have been a local depression so affecting the value of the property that in 1926 and 1927 it was not of the value assessed. That is pure speculation. There is no evidence before us on this phase.

██ The appellants emphasized at the trial the rental value of the property in attempting to prove the fair market value of the property. Two of appellants' witnesses testified that they based their opinions as to the market value upon the earnings of the property.

If the court considered the rental of one thousand dollars a month, received by the appellants from lease of the building since June 1, 1925, up to and including the time of trial, as a factor in determining the fair market value it did no more than appellants insisted upon at the trial. If that testimony be disregarded, appellants' evidence of market value consists of the testimony of three expert witnesses that in their opinions the fair market value was forty to forty-five thousand dollars. One of these witnesses testified that he was acquainted with the property and had for many years sold real estate in Kitsap county. In the opinion of the county assessor, "the fair market value of the property was $150,000." The deputy assessor's appraisal was the amount at which he assessed the property in 1926, $97,000; "that is a big reduction of what I assessed it at and what I figure the building cost."

The rental received for the past two or three years was an item to be shown as tending to establish the actual cash value of the building, and the court properly considered that as tending to show the fair market value of the property. To be deducted from this annual income of twelve thousand dollars, was a total amount of $5,250 for taxes, depreciation and repairs, which appellants' expert witnesses testified should be deducted from the rental income. A net income would remain for the appellants of $6,750. If this amount were capitalized at eight per cent, the valuation of the property would be $84,375. If capitalized at seven per cent, the valuation would be $96,425. There is no such disparity between the assessed actual value of $97,000 and the foregoing computation of value as to raise a presumption of fraud on the part of the assessor.

■ It is to be presumed that the assessing officials did their duty in making the assessment. They testified as to the market value of the property, and their testi-

mony as to the assessment they made is, as between the appellants (the complaining taxpayers) and the respondents (the taxing district) evidence of market value, and in the absence of a showing by the appellants of gross overvaluation constituting fraud, the judgment of the taxing official as to the fair market value will not be disturbed by the courts.

"The mere overvaluation of property by the assessor, if he acts in good faith, and in the honest exercise of his judgment, furnishes no ground for relief in equity." *Templeton v. Pierce County*, 25 Wash. 377, 65 Pac. 553.

The trial court found the valuation not excessive. Under the evidence of this case, there was not such a showing of excessive valuation as to entitle appellants to relief. The cases cited by appellants in support of the contention that the courts will relieve against excessive valuation above a true value are not applicable to the facts in the case at bar. Accepting the basis on which appellants relied in the trial court as the basis of the real value of the property—the earnings of the building—the appellants have not shown that the property was valued greatly in excess of the real value of the property.

We held in *Tacoma Mill Co. v. Pierce County*, 130 Wash. 358, 227 Pac. 500, that a valuation of land at $180,700 which was sold the same year for $90,000, which was a fair and the best price obtainable, shows a constructively fraudulent assessment entitling recovery of the excess tax paid. There the real value of the property was conclusively proven. Here, there is no such showing by appellants. The evidence does not preponderate against the finding that the valuation was not excessive.

Though the assessor placed a higher valuation upon the property than the appellants' witnesses placed

upon it, that is not conclusive evidence unless such an excessive valuation is fixed that fraud must be presumed. The question of value is largely one of opinion, and in cases like the one at bar, the law has confided to the taxing officers authority to determine values. The appellants have not made such showing as entitles them to relief; therefore the judgment is affirmed.

TOLMAN, PARKER, MAIN, and BEALS, JJ., concur.